May it please the court, my name is Carolyn Salmon. I represent the plaintiff appellants in this case, William Schechner and John Lobertini. In this case, the district court found that the plaintiff's statistical evidence of disparate treatment age discrimination was insufficient as a matter of law to support their prima facie case of age discrimination. The court reached this on the assumption that KPIX's asserted justifications for terminating Mr. Schechner and Mr. Lobertini as part of a 2008 reduction in force must, as a matter of law, be taken into account as part of the statistical analysis. However, there were multiple disputes of fact in the record that suggested that KPIX's asserted justifications were not at all contextual. Because of those disputes of fact, the district court's finding was error. These disputes of fact called into question the relevance and the veracity of KPIX's asserted justifications You may ask, what findings do you claim that the district court made? This was summary judgment. There are no findings in summary judgment. Well, the court found, the court held that in order to be, in order to support a prima facie case of age discrimination, the statistical analysis must account for a defendant's asserted justifications. It also found that it could not consider any other evidence in the record that might suggest that those justifications were untrue or pretextual. So then she said as a matter of law. As a matter of law. Yes. Because the statisticians, your statisticians' report didn't deal with those other factors. I'm sorry. Could you repeat that? So she then concluded that your statistician's report was insufficient in light of her understanding of the case law. That's correct. Because it didn't deal, it didn't address the other reasons, the supported two issues here. One is an issue of law. Was the analysis that the district court performed correct? That is, is it correct that you may not take into account any other evidence in the record when determining whether or not an employer's justification for its adverse decision is true or untrue? Must you accept that at face value, which is what the district court did in this case? The second issue is whether or not the district court was correct in finding that our statistical analysis accounted for no factors other than age and termination. In fact, he did account for factors other than age and termination in his analysis. Well, even if you, let's just, let's assume for a moment that you establish a prima facie case. They come up with their legitimate nondiscriminatory reason, as they did the evidence of pretext. You would like to know what that evidence might be. What is that? Because all I really see here is just the statistical report. Well, the district court did recite the evidence of pretext in its initial statement of facts. It just didn't perform any analysis of those facts because it found as a matter of law that it was precluded from doing so. So the evidence in the record that supports a finding that contract expiration was not actually a factor considered by KPAX in its decision-making process is, first, that if it did in fact use contract expiration date, the two on-air talent that it would have selected for termination should have been Simon Perez and Joe Vasquez. And that is ---- Well, let me ask you about that. Okay. Let's just take that one little point for a moment. Is it fair to say that there's real, there really is no dispute that they had arrived at some agreement, binding agreement before the layoff decisions were made? Your Honor, with all due respect, I do not think it is fair to say that. And the reason I don't think that it's fair to say that is there is an e-mail exchange in the record between Simon Perez's attorney who was negotiating his contract with KPIX and Daniel Rosenheim, the vice president and news director, which indicates that the initial term sheet for Mr. Perez that was being circulated at the time of the RIF had been withdrawn and replaced with an entirely new term sheet that had not even been approved until April, well after the RIF. Which occurred on March 31, 2008. So whether they had, those two individuals had arrived at a binding agreement before the RIF, you'd say is a factual dispute that's material. That's correct. What else? I'm sorry? What else? Secondly, I would say that in one of the initial iterations of the RIF list, so in one of the initial documents created by Mr. Rosenheim and Mr. Longinati, both Perez's and Vasquez's name appear on that list, as do their contract expiration dates. Those expiration dates are listed as February 6, 2008, and January 6, 2008. Now, these are documents that were created contemporaneously with the decision-making process in the RIF. So obviously when that document was created, neither Rosenheim nor Longinati considered the contract expiration date to be sometime in 2011. The third piece of evidence that I would point to would be that Ron Longinati gave testimony during his deposition that whether or not contract status was a matter of fact, that he was dissembling about whether or not contract expiration date was in fact considered. So those are the three material facts that, if resolved in your favor, we believe  that age was the true reason for their being laid off. With the statistical studies as well. I believe that if there is a triable issue of fact as to whether or not contract expiration date was actually considered as part of the RIF selection process, then it cannot be considered as a matter of law a valid variable other than age that must have been accounted for in the statistical analysis. And you could say that on summary judgment, you can't find that there is some evidentiary dispute, but it is so insignificant that it's just not going to support the proposition you're speaking. That's true, but I do not think that that is the case here, obviously, or I would not be standing before you. There are also disputes of fact with respect to whether or not KPX took into account job consideration, and I can review those with you as well, if you would like me to. Thank you. Address my concerns. Any other concerns? I did. I'm sorry, I forgot to do that at the beginning. I'd like to save five minutes, so if there are any additional questions from the Court, I'd be happy to answer them. Why don't you just save all of it and see what the other side has to say. Good morning. My name is Maureen McLean. I represent CBS Broadcasting, Inc. Could you keep your voice up? I can. Thank you, Your Honor. Why don't you pull the microphone down just enough. Does that work? Yes. So going, looking at the record as a whole, I think it's the ultimate question is, is there sufficient evidence in this record to submit the case of age discrimination to the jury? And I submit that there is none. This is an older workforce, as the statute defines age. And any category, any selection process would have impacted the same age group. The average age of on-air talent before the layoff was 48.92 or so. The average age after the layoff was 47.45. It remained an older workforce. The elements that have been raised by plaintiffs with respect to factual disputes, Your Honor, do not raise factual disputes. They don't rise to the level of material issues of disputed fact, both because the age statistics, the age composition of the workforce is so strongly over 40, and because the underlying issues don't merit the spin that has been placed on them. So was the district court's legal analysis of our case law with respect to what the statistics must show, was that correct? I think so, Your Honor. I noticed in your brief, when I read your brief, you kind of step away from it a bit. The overriding principle with respect to statistical evidence is that it doesn't show discrimination. Statistics prove the absence of chance, potentially, but not discrimination. In this case, the Court was absolutely right to say that this Court's rulings have required to rest a prima facie case on statistics a stark pattern of discrimination which can be explained on no basis other than age. Well, she went on to say that she didn't use those words, but she used those words, but she also said it has to address the nondiscriminatory reasons that the employer advances. And I don't think our case law quite says that. The case law says that relevant factors have to be considered. I mean, how does it – let me ask you this. When the statistician is preparing a report like this, how does he or she know what the reasons are going to be that the employer will offer? The statistician at the time the final report was prepared had the full testimony of our decision-makers who said precisely how they did it. Our statistician had that testimony, too. And his report sets out the contract expiration dates clearly and says this was followed to a T. In the plaintiff statistician's report, the statistician both ignored relevant factors, that is, contract expiration date, which among the general assignment reporters the testimony was that was what was used. And I will address the Perez-Vazquez issue as well. And included non-relevant factors. He included the ages of anchors, which all the testimony said was a separate category of consideration. So it was both over-inclusive and under-inclusive. And even with all of that, Your Honors, the statistician's report was very weak. The standard deviations in that report range from 1.83 to under 3, to 2.8-something. So even considering all of that, the statistics are weak. And they have to be weak in an age group that has an average age of 48-plus before the layoff and 47 after the layoff. If you take Vazquez and Perez, the argument given to you that one of them had an e-mail where the reporter's agent said, hey, you missed something when you wrote up our agreement, that's what happens when agreements are written up, things are reviewed and supplied. That doesn't mean that a meeting of the minds had not occurred. Moreover, that only goes to one of the two gentlemen. It doesn't explain the other, so you can't say that they both should have been in the analysis. Moreover, the ages don't change that much. If you substitute, because this was an older workforce, if you substitute the two individuals, Perez and Vazquez, as the first two to be laid off, the laid-off ages among the reporters are 41, 42, 57, 56, for an average age of 49, as opposed to what happened, and that is 57, 56, 47, 66, an average age of 56.5. Even if you view that as a pretextual argument, it can't possibly be a demonstration of age discrimination. Any category that would have been selected here would have been dealing with a group of employees who were 47, 48, or older. Any way you slice it, the age composition would have been the same. So you cannot say that the statistician has a compelling report. It's both under-inclusive and over-inclusive. And here, where there really is no factual dispute with respect to, I think, the reasoning we used, which was, as shown in the errata that was presented to you yesterday, and you should have, spoken to the reporter, spoken to one of the plaintiffs when he was terminated. The general manager said, we looked at contract dates and we chose the first ones to expire. This was not opposed to rationale. It was what they used. So from our point of view, here is a defendant who's really done everything right. It has a much older workforce. It exempted, it looked at its categories of employees and said, we're going to take one anchor, because we have a surplus of anchors that are a year old, looking at the staff reporters, and then we're going to take the general assignment reporters, and we're going to just take the first four contract expiration dates. If you look at the record, there is a sheet that appears in Plaintiff's Volume 3 at 214, which is a listing that the news director had of all contracts at the time the decision was being made. This is in mid-March of 2008. And both Perez and Vasquez are listed on that document as having had done deals, even though they weren't signed off. The document that Plaintiff's Counsel referred to having a list of contracts that included them is a much earlier document. It's in December of 2007. So we submit that the document in March, when the decision-making was going on, which says these guys have contracts, dispels that as a disputed issue of fact entirely. With respect to Mr. Longinotti's testimony, he misheard, misspoke, he corrected the statement immediately. It can't possibly rise to the level of a disputed issue of fact. So we submit that whatever the standard is with respect to statistics, and whatever the standard is with respect to pretext, the fact issues have to be sufficient to raise an inference of age discrimination. And given the composition of this workforce, and given the way that the termination decision was made, it's not possible for any of this to suggest age discrimination in this case, where the average age remained in the high 40s after the layoff. Unless the Court has questions, I'm prepared to submit. Roberts. The first point I would like to make is that counsel's argument about the average ages of the workforce before and after the RIF is highly misleading. And I apologize deeply to the Court for having to go into an analogy dealing with statistics in order to help explain this, but I think that it is the most clear way to do so in this case. So I will give you an example of a workforce. And the age of that workforce, let's say that there are 30 employees in that workforce. 10 percent of them, that is three people, are age 60. Everyone else, the remaining 27, are 40. The average age of this workforce is 42. Now, let's suppose that three of the 30 employees are RIFed, and those three are all the three 60-year-olds. KPIX would argue that a before and after comparison eliminates any inference of discrimination, because before the RIF the average age is 42, and after the RIF the average age is only 40. A difference of only two years, no big deal. But that, Your Honors, is not the appropriate comparison, because what we are interested in is not the composition of the workforce before and after, it is the selection process that KPIX used in selecting Mr. Schechner and Mr. Lobertini for termination. That is how the employer chose employees for RIF. So in the example that I've just given you, the average age of those chosen for termination is 60. That is 18 years more than the average age of the workforce. In our case, the average age of those chosen for RIF is 55.4. The average age of the 38 not laid off is 46.4. That's a difference of nine years. And I would suggest that this, not the average age before and after the RIF, is the relevant comparison. Well, so that may become important for purposes of a prima facie case, but then, you know, it just gets you to the next second and third steps of the Donald Douglas framework. Going back to pretext? Yes. So going back to pretext, in addition to the contract expiration date being used as a factor or not being used as a factor, I think there is even more abundant evidence in the record that job category was not used as a determinative factor in making selections for the RIF. First of all, where do you find the pretext? It's a very unusual case. It doesn't they had to get rid of, let's say, 10 percent of the workforce. They've got a workforce, all of them in the suspect category, and they choose for a variety of reasons. But are any of them pretextual that they're trying to get rid of a person because they're old? It just doesn't seem here that we have that kind of a scenario. It's a very odd case. I think, Your Honor, if you were to hear the evidence of pretext with respect to job category, you might be convinced otherwise. So the first example is that KPIX has asserted that it excluded anchors from consideration for the reduction in force. But it is undisputed that Rick Kwan, who was 51 at the time of the RIF, was involuntarily terminated. Now, he was an anchor, yet KPIX asserts they excluded anchors. Kwan was replaced with Kim Coyle, who was 38 at the time of the RIF. KPIX's only explanation for this was, well, we decided to make an exception to our process. Now, he's not a plaintiff in this case. He is not a plaintiff in this case, but I think comparators, the evidence of comparators is relevant evidence in showing age discrimination within this case. Five people, or we would argue six people, were terminated as part of the RIF. So evidence that Mr. Kwan was terminated because of his age would support an inference that Mr. Lobertini and Mr. Schechter were similarly terminated because of their age. Didn't they always state from the outset that they were going to take somebody from, they were going to take Kwan from the sports department? They did not, no. They stated from the outset that they were going, that they called a sister station in Los Angeles and asked that sister station, how did you conduct your layoff? And that sister station said, well, it was easy, we just picked earliest contract expiration date. So that was the beginning of KPIX's articulated process. It then decided that it would eliminate the pool of employees who were eligible for termination to only general assignment reporters, and then decided that it would make an exception for Mr. Kwan. Now, I think another important to make is that a trier of fact could include from the evidence in the record that Barbara Rogers, who was 61 at the time of the RIF and the oldest anchor, should have been counted as one of the on-air talent who was selected for termination in connection with the RIF. First, she was included in several preliminary documents, which listed employees being considered for layoff by KPIX. Her name is on one of the handwritten lists that is contemporaneous with KPIX's decision-making process. It is also included on a list that is entitled budget talent salaries, also created contemporaneously with the RIF decision-making process. And most importantly, George Brandt, KPIX's controller, testified that Barbara Rogers was one of the on-air talent who was terminated as part of the RIF. Yet KPIX would have her excluded from that pool of talent eliminated in connection with the RIF, obviously because her age at 61 would have a significant impact on the statistics in the record. But there's some evidence that shows that she accepted a buyout or something, she agreed to leave on her own. There is evidence, there was testimony that after the decision, after the mandate to cut costs came down and the decision was made to layoff employees, Barbara Rogers was offered the option of either voluntarily resigning or being RIF. She chose to voluntarily resign, but had she not made that decision, she would have been RIFed. Okay. You're over your time now. Thank you very much, Your Honor.
judges: Fletcher, Noonan, Paez